IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01888-REB-KMT

THE UTE INDIAN TRIBE OF THE UINTAH AND OURAY RESERVATION,

    Plaintiff,

v.

JOHN P. JURRIUS
THE JURRIUS GROUP LLP
THE JURRIUS OGLE GROUP LLC,

    Defendants.

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND ITS COMPLAINT

The deadline for the parties to amend their pleadings was March 2, 2009. On that day the Defendants filed an unopposed motion to amend their Answer and Counterclaim, adding two new counterclaims. Doc. 43. Defendants acknowledged the new claims were based on the "same set of facts" alleged in the original counterclaim, but they gave no reason for their initial failure to include them. Id. at p 3 ¶ 8. Defendants noted that discovery was still in "initial stages." *Id.* at p 2 ¶ 4. Nevertheless, Defendants refused to consent to the Plaintiff Tribe's amendment of its complaint -- filed the same day -- and Defendants now claim the Tribe's motion to amend should be denied because, *inter alia*, the new claims should have been included in the original complaint, and the Tribe's motion is "untimely." Doc. 59, p 2.

Defendants cannot articulate any prejudice arising from the Tribe's amendment. Rather, they oppose amendment primarily on grounds of bad faith (Doc. 59, pp 5-9) and

futility (Doc. 59, pp 9-14).  These objections are meritless.  As the Supreme Court has made clear, Rule 15(a) "declares that leave to amend shall be 'freely given when justice so requires' [and] this mandate is to be heeded." *Forman v. Davis*, 371 U.S. 178, 182 (1962).  The Rule's liberal allowance of amendments "reflects the basic policy that pleadings should enable [each] claim to be heard on its merits," not decided on technicalities.  *Id.* at 1185-86.  Thus, motions to amend should be denied only on showings of undue delay, prejudice, bad faith, dilatory motive, failure to cure deficiencies under previous amendments, or futility.  *Id.*  No such factor is present here.

### I.  There Is No Bad Faith Justifying Denial of the Motion

Defendants claim a dispute between the parties pending before the court, regarding Defendants' motion to compel production of certain documents the Tribe believes privileged, shows "bad faith" on the part of the Tribe.  This is specious.  First, the Tribe's memorandum (Doc. 63), demonstrates a good faith basis for asserting the documents are privileged.  Despite Defendants' suggestions to the contrary, opposing parties can disagree in *good faith* over the existence or waiver of evidentiary privileges.

Second, the existence of a discovery dispute between parties is *not* grounds for denying a motion to amend.  Other courts faced with the same argument have rejected this notion, because the inquiry must focus on the motion itself.  As one court explained:

> [Defendant] has misconstrued the meaning of "bad faith," as it was contextualized in *Forman*.  When considering a motion for leave to amend, the court should grant leave unless "the *motion* is being made in bad faith." (citation omitted) (emphasis added)  The scope of the court's inquiry is therefore limited to whether the motion to amend *itself* is being made in bad faith, not whether the original complaint was filed in bad faith or whether conduct outside the motion to amend amounts to bad faith. (citations omitted) (emphasis in the original)

*Trueposition, Inc. & KSI, Inc. v. Allen Telecom, Inc.,* No. CIV.A.01-823, 2002 WL 1558531 (D. Del. July 16, 2002).[1] *See also Thomas & Betts Corp. v. Panduit Corp.*, No. 93 C 4017, 1999 WL 92894 (N.D. Ill. February 17, 1999) (allegations of bad faith tactics in discovery are immaterial to evaluation of a motion to amend). The Tribe believes in good faith that the documents sought by Defendants are privileged. In any event, the discovery dispute is irrelevant to evaluation of the Tribe's motion to amend.

## II. Amendment Will Not Be Futile

Defendants claim the amendments are futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). The futility determination is "functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999) (appellate courts review denials for futility *de novo*). The amended complaint alleges viable, not futile, causes of action.

### A. Amendment of Counts II and III Is Not Futile

Count II of the amended complaint alleges the Financial Consulting Agreements (FCAs) between Defendants and the Tribe are void *ab initio* for lack of federal approval under the Indian Mineral Development Act ("IMDA"), 25 U.S.S. § 2102(a). *See Quantum Exploration, Inc. v. Clark*, 780 F.2d 1457, 1459 (9th Cir. 1986). Defendants argue this is futile because "the underlying agreements are not 'Minerals Agreements' governed by the IMDA." Doc. 59, p 9. The Defendants have cited no legal authority for their proposition—and in fact there is none, because Count II presents an issue of first impression. Whether the FCAs fall under the broad ambit of IMDA is a question of

---

[1] All cases with "WL" and "Lexis" citations are included herein as Exhibit A.

3

statutory interpretation.  The Tribe has made a persuasive argument that the FCAs do fall under IMDA, considering both the express Congressional intent and broad statutory language, and the Defendants' use of the FCAs to obtain "direct ownership" interests in the Tribe's minerals, and to "manage" and "share in the production" of Tribal minerals.[2]  The fact that this claim presents an issue of first impression does not render it futile.

Nonetheless, because Count II presents an issue of first impression, the Tribe seeks to add a new claim, amended Count III, to clarify and amplify the Tribe's legal theories under applicable federal Indian law.  Amendments which clarify and amplify legal claims should be granted.  *See, e.g.*, *Forman*, 371 U.S. at 182; *Clay v. Martin*, 509 F.2d 109, 113-114 (2nd Cir. 1974).  Amended Count III seeks a declaration that the FCAs are also void *ab initio* under federal common law and statutory restraints on the alienation of Indian property, and under the Tribe's Constitution.  These restraints on the alienation of Indian property have long been recognized by courts in cases such as *Johnson v. M'Intosh*, 8 Wheat 543, 573-74 (1823); *Ewert v. Bluejacket*, 259 U.S. 129, 137 (1922); *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974), (*Oneida I*), and *County of Oneida v. Oneida Indian Nation*, 470 U.S. 226 (1985) (*Oneida II*).  Defendants' futility argument does not even *address* the Supreme Court's holding in *Oneida II* that Indian tribes have a cause of action under federal common law for conveyances of their property, or claims to such conveyance, when the purported conveyance or claim to conveyance was not approved by the federal sovereign.

---

[2] The Tribe incorporates by reference its legal argument on this point in the Tribe's Opposition to Defendants' Motion for Judgment on the Pleadings, Doc. 38, pp. 10-12, and the Tribe's Motion for Dismissal of the Amended Counterclaims, Doc. 61, pp. 6-7.

4

Further, Defendants have not cited any legal authority for their argument that the Non-Intercourse Act, 25 U.S.C. § 177, provides no basis for the relief sought under amended Count III. Defendants instead mangle the Act's language, ignoring that § 177 by its terms applies to "grants" of "any title" or "*claim*" to Indian property. The FCAs "granted" Jurrius a "Participation Option," allowing him to obtain ownership interests in the Tribe's mineral estate and other assets. The FCAs expressly state "[w]here possible" the participation interest "shall" be a "direct participation" with "*ownership interests. . . assigned directly*" to Jurrius. Thus the FCAs "granted" the Defendants a purported "claim" to Indian property, well within the abmit of § 177. Defendants' argument to the contrary--unsupported by *any* legal authority--is unavailing.

Defendants' arguments against the applicability of 25 U.S.C. § 464 fail for the same reason. The restraint on alienation of Indian property under § 464 is not limited to "Indian lands," as Defendants suggest, but applies to any "sale, devise, gift, exchange or other transfer of restricted Indian lands or of shares in the assets of any Indian Tribe." In fact, the best known case to construe § 464, *Black Hills Institute of Geological Research v. South Dakota School of Mines and Technology*, 12 F.2d 737, 742-43 (8th Cir. 1993) ("*Black Hills*") is nearly identical to the Tribe's claims under amended Count III. There, the Eighth Circuit invalidated a contract between Black Hills and an Indian allottee for the sale of dinosaur fossils from the allottee's land. In nullifying the agreement for lack of federal approval, the court held that federal restraints on the alienation of Indian property apply not only to real property but also "to interests in [Indian] land, like fossils" (or minerals) "that become personal property when severed from the land." *Id.* at 743. By analogy, the restraint under § 464 clearly applies to

5

minerals *in* Indian lands.  Finally, Defendants' argument that restraints on alienation under 25 U.S.C. § 85 apply only to individual Indians presents at most a question of statutory construction; it does not render the Tribe's § 85 claim a legal futility.[3]  The single case cited by Defendants in support of their argument is distinguishable.  In *Ashley v. United States*, 408 F.3d 997 (8th Cir. 2005), the Court ruled that where the Tribe itself was not a party to the litigation, individual tribal members lacked standing to prosecute a claim under 25 U.S.C. § 464.  That holding is inapposite here, where the Tribe is the plaintiff.  More importantly, unlike the Defenants' FCAs, the bond transaction that was the subject of the § 464 claim in *Ashley* was *approved* by the federal government.  408 U.S. at 999.  And unlike the Defendants here, the bondholders in *Ashley* were *not* granted a claim to "direct ownership interests" in Tribal property.

### B. Amendment of the IAA Claims Is Not Futile

Defendants claim the FCAs are not "investment adviser contracts" and neither they nor the EDAs can be rescinded.[4]  The FCAs are clearly investment adviser contracts, because under them Jurrius, for compensation, provided advice as to the value or advisability of investing in securities.  Defendants claim there is some archetypal "investment adviser's contract", and that any agreement which does not conform to that archetype is, *ipso facto*, outside the ambit of the IAA.  Specifically, Defendants claim the FCAs can only be investment adviser contracts if on their face they call for certain services, using some magic language which converts ordinary

---

[3] The Tribe incorporates by reference its statutory construction of § 85 explained in its Motion for Dismissal of the Amended Counterclaims, Doc. 61, pp. 7-8.

[4] Defendants incorrectly assert that Plaintiff seeks only to rescind the FCAs.  Plaintiff seeks to rescind all contracts made in violation of the IAA.

6

contracts into "investment advisers contracts." This is nonsense. The IAA defines "investment advisory contract", albeit in a different context, as "any contract or agreement whereby a person agrees to act as investment adviser to or to manage any investment or trading account of another person..." 15 USCS § 80b-5. Here, Jurrius agreed both to "act as an investment adviser" by advising the Tribe as to the value or advisability of purchasing securities and to "manage [] investment or trading account[s]" of the Tribe via the Venture Fund.[5] Courts have found persons to be "investment advisers" when giving investment advice under a wide variety of contracts. *See Thomas v. Metropolitan Life Ins. Co.*, 2008 U.S. Dist. LEXIS 82201 (W.D. Okla. Oct. 16, 2008) (contract to purchase insurance policy); *SEC v. Kenton Capital, Ltd.*, 69 F. Supp. 2d 1 (D.D.C. 1998) ("Joint Venture Agreement"); *Abrahamson v. Fleschner*, 568 F.2d 862 (2d Cir. 1976) (partnership agreement); *SEC v. Smith,* 1995 U.S. Dist. LEXIS 22352 (E.D. Mich. 1995) (account management agreement). As Plaintiff has explained,[6] the focus is on actions. "'[A]ny person who, for compensation, engages in the business of advising others…as to the...advisability of investing in, purchasing, or selling securities…'" is an investment advisor. *SEC. v. Nat'l Executive Planners, Ltd.*, 503 F. Supp. 1066, 1074 (M.D.N.C. 1980) (quoting 15 U.S.C. § 80b-2(a)(11)).

Further, even if the FCAs are not "investment advisers contracts", Defendants are incorrect as to the resultant analysis. Defendants argue that because (in their view), the FCAs are not investment advisers contracts, they cannot be rescinded and hence there is "nothing to rescind in an IAA claim." Def. 12(c) Reply 3. But the IAA provides

---

[5] The Tribe incorporates by reference its previous arguments on this topic, *see* Doc 38 p. 2 - 10.

[6] *See* Doc. 38 p. 2 - 6

7

that "*[e]very contract* made in [or] the performance of which involves the violation of...any provision of this title...*shall be void*..." 15 USCS § 80b-15 (emphasis added). "When confronted with clear and unambiguous statutory language, our duty is simply to enforce the statute that Congress has drafted." *Van Scoten v. Commissioner of Internal Revenue,* 439 F.3d 1243, 1258 (10th Cir. 2006).  The statute does not limit itself to certain types of contracts.  The inquiry is whether the contracts, through their formation or execution, violate the IAA.  *See generally GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 200-01 (3d Cir. 2001) (discussing rescission under the Securities Act).

Defendants' argument -- in nearly identical terms -- has been rejected by at least one other court in this Circuit.  In *Thomas v. Metro. Life Ins. Co.*, *supra*, 2008 U.S. Dist. LEXIS 82201, MetLife argued "that the IAA only allows rescission of a contract to receive financial advice, not rescission of the contract to purchase an insurance policy [and] therefore, [] there is nothing to rescind..."  2008 U.S. Dist. LEXIS 82201 at *25-6.  The court held such reasoning "would allow a defendant to avoid liability under the IAA by combining compensation for investment advice with the price of the product being purchased pursuant to that advice."  *Id.* at *26-7.  The facts here are similar*.*  Like the defendant in *Thomas*, Jurrius received a defined portion of his compensation--ten percent of the Venture Fund's returns and his purported interest in the entities at issue--because the Tribe took his investment advice.

Defendants cite nothing to the contrary.  In *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11 (1979), the Supreme Court identified a private right of action under the IAA, and held that while contracts could be rescinded, claims for damages arising could not be maintained.  The Supreme Court was not faced with the question

8

here--whether a contract entered into and executed in violation of the IAA that does not itself call for investment advice may be rescinded. It is one thing to say that the only remedy is rescission. It is quite another to argue only an "investment adviser contract" may be rescinded. The Supreme Court did not even allude to this issue.

In *Wang v. Gordon,* the court explicitly couched the question before it as "whether defendant Earl Dean Gordon was an investment adviser within the meaning of [the IAA]." *Wang v. Gordon*, 715 F.2d 1187, 1188 (7th Cir. 1983). The plaintiff argued that an amendment to a purchase agreement for a building was an "investment advisers contract" and violated the IAA. *Id.* The court clearly held that "*neither defendant was an investment adviser within the Act*, nor was the 1976 amendment to the partnership agreement an investment advisers contract [and therefore] Section 215(b) affords no private remedy." *Id.* at 1189 (emphasis added). In other words, the court's analysis *began* with the fact that neither defendant was an investment adviser, and *resulted* in there being no contract to rescind. Defendants here seek to reverse the analysis, by arguing that whether they are subject to the IAA begins and ends with an inquiry into the terms of the contract.[7] Whether the contract may be rescinded under the IAA depends upon the actions of the Defendants. No case cited by Defendants indicates that where an investment adviser has defrauded his client by way of several contracts, only the contract through which the client contracted for advice is void. The statute and only case on point say the opposite.

---

[7] The other cases proffered by Defendants in their motion for judgment on the pleadings are equally inapposite. In both *Paul S. Mullin & Associates, Inc. v. Bassett*, 632 F. Supp. 532, 537 (D. Del. 1986) and *Neely v. Bar Harbor Bankshares,* 270 F. Supp. 2d 44, 49 (D. Me. 2003), the plaintiffs sought to invoke the IAA to nullify contracts to which they were not parties. This is simply not the case here.

9

### C. The Common Law Claims Are Not Futile

The Tribe has previously addressed most of the Defendants' futility arguments relating to its common law claims and the Tribe incorporates those arguments here.[8] Defendants argue the unjust enrichment claim is "facially defective."  Doc. 59, p 13.  But this argument is unavailing because it presumes Jurrius was enriched only by what he received under the contract.  As the amendments make clear, Jurrius was also enriched by things he received outside the bounds of the contract, including, *inter alia*, the unauthorized and extensive use of private jets and limousines.  Finally, Defendants misstate Utah law on breach of the implied covenant of good faith and fair dealing.  Doc. 59, p. 13.  Contrary to Defendants' argument, litigants can recover damages for both breach of express covenants *and* the implied covenant of good faith and fair dealing. *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1046-47 (Utah 1989) ("The concept of good faith and fair dealing is not susceptible to bright-line definitions and tests. . . . Where true injustice has occurred, relief should be provided.").

For the foregoing reasons, the Tribe's motion to amend should be granted.

Dated:  April 7, 2009

| **FREDERICKS PEEBLES & MORGAN LLP** | **MILBERG LLP** |
|---|---|
| /s/ Thomas W. Fredericks<br>*Thomas W. Fredericks*<br>1900 Plaza Drive<br>Louisville, CO 80027<br>Tel: (303 ) 673-9600<br>Fax: (303) 673-9155<br>tfredericks@ndnlaw.com | /s/ Benjamin Y. Kaufman<br>*Benjamin Y. Kaufman*<br>One Pennsylvania Plaza, 49th Floor<br>New York, New York 10119<br>Tel: (212) 594-5300<br>Fax: (212) 868-1229<br>bkaufman@milberg.com |
| **Counsel for Plaintiff** | **Counsel for Plaintiff** |

---

[8] The Tribe incorporates by reference its arguments in Doc. 38, pp. 12-15.

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2009, I electronically filed the foregoing **REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND ITS COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of the filing to the following email addresses:

**SHERMAN & HOWARD L.L.C.**
Gordon W. Netzorg
Susan Bernhardt
J. Nicholas McKeever
633 Seventeenth St., Ste. 3000
Denver, Colorado 80202
Telephone: (303) 297-2900
Fax (303) 298-0940
gnetzorg@shermanhoward.com
sbernhardt@shermanhoward.com
nmckeever@shermanhoward.com

**Counsel for Defendants John P. Jurrius, Jurrius Group LLP, and Jurrius Ogle Group LLC**

/s/ Tia Gerung
Tia Gerung, Assistant to Frances Bassett
**FREDERICKS PEEBLES & MORGAN LLP**
1900 Plaza Drive
Louisville, CO  80027
Telephone: (303) 673-9600
Facsimile: (303) 673-9839
tgerung@ndnlaw.com
**Counsel for Plaintiff**